NATHAN ALAN VIETH,

        Plaintiff,

  v.

                              Case No. 20-cv-70-pp

SHEBOYGAN COUNTY SHERIFF'S DEPT., *et al*,

        Defendants.

**ORDER DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 4), DENYING PLAINTIFF'S MOTION TO WAIVE PAYMENT OF INITIAL PARTIAL FILING FEE (DKT. NO. 9) AND DENYING PLAINTIFF'S REQUEST FOR COURT RECORDS (DKT. NO. 7)**

Plaintiff Nathan Alan Vieth is a prisoner and represents himself. He filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. Dkt. No. 1. He also filed a motion for leave to proceed without prepaying the filing fee (*in forma pauperis*). Dkt. No. 2. After the court assessed the plaintiff an initial partial filing fee, dkt. no. 6, he filed a motion to waive the initial partial filing fee, dkt. no. 9. The plaintiff also filed a motion asking the court to appoint counsel to represent him, dkt. no. 4, as well as a motion requesting that the court order Sheboygan County to produce records from Sheboygan County Circuit Court Case No. 19-cv-685 and other documents related to that case, dkt. no. 7. The plaintiff also requests placement in a federal witness protection program. Dkt. No. 7.

1

**I.     Motion to Waive Initial Partial Filing Fee (Dkt. No. 9)**

On January 16, 2020, after the plaintiff filed his motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, the court issued an order assessing $7.90 as an initial partial payment of the required $350 filing fee, due on or before February 6, 2020. Dkt. No. 6. In the order, the court advised the plaintiff that once it received the initial partial filing fee, it would determine whether the case could proceed without the plaintiff having to pay the balance of the $350 filing fee in a lump sum. Id. at 3. The court also stated that if the plaintiff did not have the funds available in his regular account to make the initial partial payment of $7.90, he could use funds from his release account. Id.

The plaintiff then filed a motion entitled "Petition to Proceed In Forma Pauperis." Dkt. No. 9.[1] He states that he cannot pay the initial partial filing fee because he is "indigent and currently incarcerated." Id. at 1. The court construes this as a motion to waive the initial partial filing fee.

Federal law requires that any party filing a complaint must pay a filing fee of $350. 28 U.S.C. §1914(a). It also requires a party filing a complaint to pay a $50 administrative fee. Judicial Conference of the United States District Court Miscellaneous Fee Schedule Effective May 1, 2013, #14. The law does *not* allow the court to waive the filing fee in full if the person filing the complaint is a prisoner. Rather, it says that if the court determines that the prisoner

---

[1] The court notes that the plaintiff filed an identical motion in case number 20-cv-69 and a similar motion in case number 20-cv-95, both assigned to this court.

qualifies for *in forma pauperis* status, (a) the $50.00 administrative fee is waived, and (b) the court may allow the prisoner to pay the $350.00 by paying an initial partial filing fee followed by monthly installments until the $350.00 has been paid in full. The law requires the court to calculate the initial filing fee and the installments based on 20% of either the average monthly deposits into the prisoner's account or the average monthly balance in the prisoner's account for the six months preceding the date the complaint was filed, whichever is greater. 28 U.S.C. §1915(b).

In its January 16, 2020 order, the court considered the plaintiff's average monthly balance in his prison account for the six months immediately preceding the filing of his complaint. Dkt. No. 6 at 2. The court determined that the average monthly deposit in the plaintiff's prison account was $39.50 and the average monthly balance was $0.00. Id. That is how the court came up with the $7.90 as an initial partial filing fee. Id.

In his motion to waive the initial partial filing fee, the plaintiff simply states that he cannot afford to pay the initial partial filing fee, but he does not explain in detail why he cannot pay it. Dkt. No. 9. His certified trust account statement, dkt. no. 3, submitted with his original motion to proceed without prepaying the filing fee, contradicts his statement and shows that he can afford to pay the assessed initial partial filing fee of $7.90. And the facts that the plaintiff is incarcerated and indigent are not a basis for the court to waive the filing fee—the reason the Prison Litigation Reform Act exists is, in part, because Congress realized that incarcerated plaintiffs likely would be indigent.

3

The court will deny the plaintiff's motion to waive paying the initial partial filing fee. The court must receive the initial partial filing fee of $7.90 by the end of the day on **June 22, 2020**. The court reminds the plaintiff that if he does not have the funds available in his regular account to make the initial partial payment of $7.90, he may use funds from his release account. If the court does not receive the initial partial filing fee by the end of the day on June 22, 2020, the court will dismiss this case without prejudice. If the plaintiff does not want to pursue this lawsuit at this time, he does not need to take any further action.

## II. Motion to Appoint Counsel (Dkt. No. 4)

When he filed his complaint, the plaintiff asked in his cover letter that the court help him find a lawyer for his cases. Dkt. No. 4 at 1. He said that he had contacted the American Civil Liberties Union in Milwaukee and the Wisconsin Lawyer Referral Service; he says he hasn't heard back from the ACLU and the LRIS told him that it couldn't help him because he was suing state agencies. Id. He says that it will be hard for him to find a lawyer for "these high profile matters." Id.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to

4

Case 2:20-cv-00070-PP   Filed 06/01/20   Page 4 of 9   Document 10

volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)). In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019), (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and

5

counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff says that he tried the ACLU and the Wisconsin Lawyer Referral Service. The court is not clear on why the lawyer referral service could not give the plaintiff the names of lawyers—it does not understand what the conflict of interest would be. Regardless, the plaintiff has not demonstrated that he has contacted *three* lawyers. Even if the plaintiff had contacted three lawyers, however, the court would not appoint counsel for him right now. The

6

plaintiff has not paid the initial partial filing fee, which means the court has not screened his complaint. Until then, the court will not know whether the plaintiff has any recognizable claims with which a lawyer could help him. The plaintiff also has not explained why the case is so complex or difficult right now that he cannot explain the situation on his own. In fact, in his letter he said that he would do the best he could until he could get a lawyer.

The court will deny the motion to appoint counsel without prejudice.

### III. Motion for Order for Court Records and Placement in a Federal Witness Protection Program (Dkt. No. 7)

The plaintiff also has filed a motion requesting that the court order Sheboygan County to release court records in Sheboygan County Circuit Court Case No. 19-cm-685, which are filed under seal. Dkt. No. 7 at 1. He also wants related records that Sheboygan County has in its possession, including the jail records of Jacquez M. Orr, the defendant in the state case. Id. at 2-3. The plaintiff states that he has asked the Sheboygan County District Attorney for these records, but that the district attorney has not responded to his requests. He also asks the court to place him in a federal witness protection program because he states he will soon be found not guilty at trial and released from jail and he fears retribution from Mr. Orr. Id. at 3.

While the Sheboygan County District Attorney is a defendant in this case, the plaintiff's request is premature. 28 U.S.C. §1915(a) requires the court to screen the plaintiff's complaint to determine whether it states a claim. The court cannot do that until the plaintiff has paid the initial partial filing fee. Once the plaintiff pays the fee, the court will screen the complaint and decide

7

whether the plaintiff may proceed against the district attorney. If the court allows the plaintiff to proceed against the district attorney and the district attorney answers, the court will give the plaintiff the opportunity to conduct discovery, including making requests for documents that are relevant to his case. At that time, the plaintiff may request the records he seeks. Because the plaintiff's request is premature, the court will not order Sheboygan County to produce the requested records at this time.

Concerning the plaintiff's request for placement a federal witness protection program, the court first observes that it has no idea whether it has the authority to order the plaintiff placed in a witness protection program. Even if it did, the plaintiff's request is premature. As of today, the plaintiff is still in the Milwaukee County Jail. http://www.inmatesearch.mkesheriff.org/. The plaintiff says that in his pending criminal case in Milwaukee County, the judge accepted his plea of not guilty by reason of mental disease or defect, and that it is "likely" that he soon will be released. Dkt. No. 7 at 3. The Wisconsin Circuit Court Access Program shows that in State v. Nathan Alan Vieth, Case No. 2019CV005029, the judge has ordered a supplementary mental examination—the doctor's report is due June 18, 2020. https://wcca.wicourts.gov/caseDetail.html?caseNo=2019CF005029&countyNo=40&index=0&mode=details

The court has no way of knowing whether and when the plaintiff will be released from the jail, or if he will be involuntarily committed if he is released. Should the plaintiff secure release from custody, and feel that he is in need of

witness protection, he should discuss that with his lawyer and with law enforcement.

### III. Conclusion

The court **DENIES** the plaintiff's motion to waive the payment of the initial partial filing fee. Dkt. No. 9.

The court **ORDERS** that by the end of the day on **June 22, 2020**, the plaintiff either must pay the initial partial filing fee of $7.90 or file a written document explaining to the court why he cannot do so. If the court does not receive the money or the written document by the deadline, the court will dismiss this case without prejudice based on the plaintiff's failure to pay the initial partial filing fee. If the plaintiff no longer wants to pursue this case, he does not need to take any further action.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 4.

The court **DENIES** the plaintiff's motion to order the Sheboygan County district attorney to produce records and to place the plaintiff in a witness protection program.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

Dated in Milwaukee, Wisconsin this 1st day of June, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER
Chief United States District Judge**

9

Case 2:20-cv-00070-PP   Filed 06/01/20   Page 9 of 9   Document 10